E. D. CARR, Appellee, v. MARGARET L. CARR, Appellant.

No. 39645.

JUNE 24, 1929.

REHEARING DENIED NOVEMBER 22, 1929.

*George H. Mayne* and *Mammenga & Kerr,* for appellant.

*Kimball, Peterson, Smith & Peterson,* for appellee.

FAVILLE, J.—The parties to this action were married January 16, 1892. They lived together until the spring of 1923. The petition in this action was filed on July 25, 1927, and is predicated solely upon the ground of desertion. The appellant alleges that, during a portion of the period in which the appellee charges the appellant with desertion, she was under the guardianship of the appellee, as a person of unsound mind. Appellant also pleaded a general denial in the cause. Appellant did not appear as a witness in her own behalf. She offered no evidence except court records. The sole issue tendered by the parties, under the record, was with regard to the alleged insanity of the appellant during a portion of the two-year period in which appellee claims that appellant was guilty of desertion. The undisputed record shows that, on or about June 18, 1923, the appellee instituted proceedings to have the appellant adjudged to be a person of unsound mind. Proceedings were had before the commissioners of insanity, and appellant was adjudged to be insane, and was committed to a state hospital for the insane on or about June 26, 1923. On or about June 29, 1923, in a proper proceeding in the district court, the appellee was appointed guardian of appellant. In July or August of 1923, the appellant was released from the hospital, and returned to her home. On or about October 16, 1923, a notice of her parole from the hospital was filed. After her release from the hospital, the appellant remained at home two or three weeks; then appellant and appellee drove to the New England states, and were gone a considerable time. During this trip, the appellant became tired of visiting in the east, and returned to Mount Morris, Illinois, by train. Appellee returned to his home in Council Bluffs. It also appears that the parties took another trip, in the summer or early fall of 1924, at which time the appellant again returned to Mount Morris, and has remained there since. The appellee again returned to Council Bluffs, and has resided there since. The appellee testified that the appellant had refused to come back and live with him, although requested so to do.

The ultimate question for determination is whether or not the appellant was shown to be of unsound mind at the time of the alleged desertion, which must have been two years prior to July 25, 1927, the date of the commencement of the action. Regarding appellant's mental condition, the appellee testified:

"Q. I think you said her mental condition at that time became fully normal again? A. Seemingly normal. Q. By December of 1924? A. Yes."

He also testified:

"I noted she was becoming normal, or near normal, along during May, 1924, and my best recollection is, she became fully normal in the early fall of 1924."

There was no evidence offered by appellee corroborative of his claim as to appellant's mental condition in 1924. It does appear of record, however, that, on or about December 31, 1925, the appellee, as guardian, filed an application in court in regard to certain papers and obligations in the possession of appellant, and in said application stated, under oath, that "the mental condition of said Margaret L. Carr is becoming such that this applicant is fearful for the safety of said papers and obligations." On December 1, 1926, the appellee filed another application in said guardianship matter, praying for an order to maintain a suit in Illinois against the appellant and others for the recovery of certain property. In said application, verified by appellee, he alleged:

"That he [E. D. Carr] held letters of guardianship out of this court, and that said ward Margaret L. Carr was placed in the state hospital at Clarinda, Iowa. In the fall of 1923, she was paroled to her said guardian, and was under his constant supervision until the fall of 1924."

Said application further alleged:

"That the parole of the said Margaret L. Carr to the guardian has not been changed, and no order has been entered by the district court of Pottawattamie County, Iowa, revoking or changing its previous order declaring the defendant Margaret L. Carr a person of unsound mind, and appointing the plaintiff as her guardian."

It alleged further:

"That if the said Margaret L. Carr is not restrained from collecting or receiving the proceeds of said notes, or restrained from transferring the same to other persons, or, if the same are

paid to her, she will squander the money so received by her, because of her mental condition."

It alleged further:

"That, when she was in her right mind, said Margaret L. Carr was a careful, saving, industrious, and thrifty woman, and helped your guardian to save and earn and keep what he had earned, and that they made good and substantial investments."

On July 24, 1925, a notice of parole of the appellant for one year was filed. On June 8, 1927, the appellee was finally discharged as guardian of the appellant. There does not appear in the record any final discharge of the appellant from the hospital to which she was committed.

It is a well established rule in actions for divorce upon the ground of desertion that the party seeking the divorce must establish four essential elements: (1) The cessation of the marriage relation; (2) the intent to desert; (3) the continuance of the desertion during the statutory period; and (4) the absence of consent or misconduct of the deserted party. *Kupka v. Kupka,* 132 Iowa 191. If the appellant was a person of unsound mind at the time that the alleged desertion took place, she would be presumed to be incapable of forming an intent to desert. Appellee's petition was filed July 25, 1927, and is predicated on a claim of desertion "for more than two years last past." The burden rested upon the appellee to establish this claim of desertion. It appears affirmatively that the appellant was duly adjudged to be of unsound mind on or about June 18, 1923. Such adjudication of unsoundness of mind raises a presumption that such condition continued thereafter. This is on the general theory that a condition once shown to exist is presumed to continue until the contrary appears. *Weber v. Chicago, R. I. & P. R. Co.,* 175 Iowa 358. Where there has been a formal adjudication of insanity or unsoundness of mind, that condition being presumed to continue until the contrary is shown, the burden rests upon the person seeking to establish such restoration to show that such condition of unsoundness no longer exists. *Weber v. Chicago, R. I. & P. R. Co.,* supra. In this case, the record affirmatively shows that the appellant was duly adjudged to be of unsound mind, and was committed to the hospital for the insane.

There is no record that the appellant was ever discharged from said hospital as cured. The appellant was paroled in 1923, and the records also show a parole for one year on July 24, 1925. Upon this state of the record, the burden rested upon the appellee to show that the appellant had been restored to such mental condition that she was capable of forming the intent to desert, as required by the divorce law. There is the oral testimony of the appellee that he thought the appellant was becoming normal, or near normal, in May, 1924, and that, to the best of his recollection, she became fully normal in the early fall of 1924. There is no other evidence bearing upon the question of the restoration of the appellant to a normal mental condition, except the fact of her parole from the hospital. Against the testimony of the appellee, however, is the record of his sworn statements, one on December 31, 1925, in which he states, under oath, that the mental condition of the appellant is becoming such that he is fearful for the safety of certain papers and obligations; and again, on December 1, 1926, he alleged, under oath, in an application, that the appellant had been adjudged a person of unsound mind, that no order of court had been entered changing the order declaring her to be a person of unsound mind, and that, if not restrained from collecting certain notes or transferring the same to others, she would squander her money, *"because of her mental condition;"* and further he alleged that, *"when she was in her right mind,"* she was a saving, industrious, and thrifty woman. The testimony of the appellee to the effect that the appellant was fully restored to her mental condition in the fall of 1924 is wholly inconsistent with his sworn applications and representations to the court in 1925 and 1926 regarding the condition of the appellant. It was not until on or about June 8, 1927, that the appellee submitted his final report as guardian of the appellant, and was discharged as such. Upon this record, we do not think that the appellee overcame the presumption that necessarily arose from the record with regard to the unsoundness of mind of the appellant. The fact that the appellant was paroled from the hospital for the insane, but was not discharged as having been cured, does not overcome the presumption of the unsoundness of mind that arises from the adjudication, but inferentially supports the contention that she was *not* cured at that time. After 1924, the appellant resided con-

tinuously at Mount Morris, Illinois, and the appellee was not shown to have been in a position to have ascertained her mental condition after said time. His testimony of his belief in the restoration of her mentality to a normal condition in 1924, upon their return from a trip, is inconsistent with his sworn statements thereafter made in court on two occasions to the effect that she was still in an unsound mental condition.

We therefore conclude, upon the entire record, that it is affirmatively established that the appellant was of unsound mental condition at or about the time of her commitment in June, 1923, and said condition is presumed to have continued until it is shown to have changed. The burden rests upon the appellee to show such change. We are constrained to hold that the burden was not sufficiently sustained, under the record in this case. The decree of the trial court must, therefore, be—*Reversed*.

ALBERT, C. J., and STEVENS, DE GRAFF, and MORLING, JJ., concur