STATE OF IOWA, Petitioner, v. JAMES P. GAFFNEY, Judge, Respondent.

No. 46927.

DECEMBER 17, 1946.

1400

John M. Rankin, Attorney General, Robert L. Larson, Assistant Attorney General, and Jack C. White, County Attorney, for petitioner.

Edward L. O'Connor and Swisher & Swisher, all of Iowa City, for respondent. ·

MULRONEY, J.—On September 20, 1945, Maurice Ricker was indicted in Johnson county for assault with intent to commit murder and a bench warrant for his arrest issued. On the next day Ricker was arrested and arraigned and he entered a plea of not guilty. His attorney then orally requested that he be committed to the State Psychopathic Hospital in Iowa City for observation and treatment. On September 21st, Judge Gaffney, respondent herein, granted this request and directed the sheriff to deliver Ricker "to said hospital and to return him therefrom upon the completion of the investigation." On September 28th, the director of the psychopathic hospital wrote Judge Gaffney a letter saying, "We find him [Ricker] to be suffering from a severe and chronic mental disease * * * Our recommendation is that he be cared for in a hospital for the mentally ill."

While Ricker was still in the psychopathic hospital the special commission of insanity at the hospital, presumably constituted as provided by section 225.37, Code, 1946, found him insane and issued its warrant committing him to the Mount Pleasant State Hospital, where Ricker was received on October 8, 1945. At the oral request of Ricker's attorneys, on October 16th Judge Gaffney ordered the criminal case continued until Ricker's "reason is restored and he becomes sane." The order of continuance plainly shows and in effect states it is based on the written report of September 28th (the letter above mentioned) and Ricker's commitment by the special commission to the hospital at Mount Pleasant.

On April 25, 1946, an assistant attorney general and the county attorney of Johnson county, "on behalf of the State of Iowa," filed a motion asking the court to withdraw or revoke its

order of continuance and issue an order setting a day for trial "upon this matter," in which it is stated the finding of insanity and commitment of Ricker were void and if the court had so known it would not have continued the case. Ricker's attorneys filed resistance to the motion in which they assert the numerous contentions now relied upon by them. On May 24, 1946, Judge Gaffney overruled the motion filed on April 25th. Petitioner then filed in this court its petition for writ of certiorari and it was ordered the writ issue.

Petitioner contends that when, after Ricker was indicted, a reasonable doubt arose as to his sanity the procedure respondent was required to follow is that prescribed by chapter 783, Code, 1946, which reads:

"783.1 Doubt as to sanity—procedure. If a defendant appears in any stage of the trial of a criminal prosecution, and a reasonable doubt arises as to his sanity, further proceedings must be suspended and a trial had upon that question.

"783.2 Method of trial: Such trial shall be conducted in all respects, so far as may be, as the prosecution itself would be, except the defendant shall hold the burden of proof, and first offer his evidence and have the opening and closing argument.

"783.3 Finding of insanity—discharge. If the accused shall be found insane, no further proceedings shall be taken under the indictment until his reason is restored, and, if his discharge will endanger the public peace or safety, the court must order him committed to the department for the criminal insane at Anamosa until he becomes sane; but if found sane, the trial upon the indictment shall proceed, and the question of the then insanity of the accused cannot be raised therein.

"783.4 Restored to reason—returned to custody. If the accused is committed to the department for the criminal insane, as soon as he becomes mentally restored, the person in charge shall at once give notice to the sheriff and county attorney of the proper county of such fact, and the sheriff, without delay, must receive and hold him in custody until he is brought to trial or judgment, as the case may be, or is legally discharged * * *.

"783.5 Insanity after commitment to jail. If, after conviction for a misdemeanor and judgment of imprisonment in

jail, the defendant is suspected of being insane, the same proceedings shall be taken as is provided in chapters 228, 229, and 230, and, if found insane, he shall be committed to the department for the criminal insane at Anamosa, and all subsequent proceedings shall be as provided in section 783.4.''

Respondent points to section 225.37, Code, 1946, vesting the special commission (composed of the medical director, assistant medical director, and one other member of the medical staff of the state psychopathic hospital) ''with all the rights, powers, duties and obligations of the commission of insanity.'' But it is' specifically provided in section 228.8, Code, 1946, that the commission of insanity ''have jurisdiction of all applications for the commitment to the state hospitals for the insane, or for the otherwise safekeeping, of insane persons within its county, unless the application is filed with the commission at a time when the alleged insane person is being held in custody under an indictment returned by the grand jury or under a trial information filed by the county attorney.''

I. The respondent did not follow the procedure prescribed by law when the question of Ricker's sanity was raised after he had been indicted and arraigned and after he had pleaded. Sections 783.1 and 783.2, Code, 1946, provide for a jury trial on the issue of sanity. The special commission, having only the powers of a commission of insanity, had no jurisdiction, since Ricker was ''being held in custody under an indictment.'' Under section 228.8 the matter was outside the boundary of its jurisdiction. State v. Murphy, 205 Iowa 1130, 217 N. W. 225. Nor do we understand respondent seriously to argue that its procedure was correct. There is a rather frail argument in respondent's brief to the effect that section 783.1 et seq. are not to be construed as a ''limitation upon the inherent implied power of the court in the exercise of its jurisdiction over insane persons but are supplements to said power.'' But throughout respondent's filed ruling denying the motion for orders there runs the theme that the proceedings taken were ''of a reasonable and humane nature * * * of an expeditious and economical character and the ends of justice were adequately served'' and his action was ''the efficient and human method.'' The same

thought is expressed in respondent's brief and argument filed in this court. The proceedings of the special commission, however much they be sanctioned by the trial court's conception of expediency, humanity, fitness, and economy, have no support in law. The proceedings that ultimately placed Ricker in the Mount Pleasant State Hospital for the Insane violated the law that plainly states one who is indicted for crime shall be tried therefor and the prosecution shall not be discontinued or abandoned in any manner unless the indictment is dismissed (section 795.5, Code, 1946), and if a reasonable doubt arises as to his insanity the issue shall be tried to a jury and if found insane he shall be committed to the department for the criminal insane at Anamosa.

■ II. Is the remedy of certiorari available to the State, and if so, was the petition for the writ timely? Under Rule 306, Iowa Rules of Civil Procedure, the remedy of certiorari is available when the inferior tribunal exercising judicial functions exceeded its proper jurisdiction or "otherwise acted illegally." Certainly no other remedy would be available to the State. In State ex rel. Fletcher v. District Court, 213 Iowa 822, 831, 238 N. W. 290, 294, 80 A. L. R. 339, we held that certiorari was available to the State in a criminal prosecution when the court refused the State's application for change of venue. There we stated:

"When on the undisputed facts the court exceeds its discretion, or takes action contrary to its mandatory duty, the party aggrieved, in the absence of other adequate remedy, is entitled to annulment on the statutory writ of certiorari. Davis v. District Court, 195 Iowa 688, 692 [192 N. W. 852]; Chicago, B. & Q. Railway Co. v. Castle, 155 Iowa 124, 131 [135 N. W. 561]; State v. District Court, 189 Iowa 1167, 1171 [179 N. W. 442]; Dempsey v. Alber, 212 Iowa 1134 [236 N. W. 86]; Shearer v. Sayre, 207 Iowa 203 [222 N. W. 445]."

The alleged illegal act of the respondent was his refusal to go forward with the prosecution—his refusal to set the criminal case for trial, which under the statute he was bound to do. We said in Tiedt v. Carstensen, 61 Iowa 334, 335, 16 N. W. 214:

1404

"The proceeding by certiorari is intended as a remedy whereby the superior court may inquire into the jurisdiction of the inferior tribunal or officer, and determine whether the tribunal or officer 'is acting illegally.' In this case, there is no question of jurisdiction. We are, therefore, only to inquire, when is a tribunal 'acting illegally' in the contemplation of the statute? When the law prescribes proceedings to be had by an officer or tribunal in cases pending before them, the omission of such proceedings is in violation of law, and the court or officer omitting them would, therefore, act illegally. In a word, if a tribunal, when determining matters before it which are within its jurisdiction, proceeds in a manner contrary to law, it acts illegally."

There can be no question but that the trial court acted contrary to its mandatory duty in refusing to set the criminal case for trial. The trial court had no discretion in the matter. It had no choice between two ways to proceed. The law prescribed but one way and the trial court's refusal to proceed in that way was illegal and its action may be reviewed upon certiorari.

III. The continuance order of October 16, 1945, was based upon the illegal proceedings that resulted in Ricker's commitment to the State Hospital for the Insane at Mount Pleasant. It recognized and sanctioned the proceedings and continued the criminal case against Ricker "until his reason is restored and he becomes sane." In the motion filed April 25, 1946, the petitioners sought a revocation of this order of continuance. Respondent argues the petition for the writ of certiorari cannot be sustained because of Rule 319, Iowa Rules of Civil Procedure, providing:

"No writ of certiorari shall issue or be sustained unless the petition is filed within six months from the time the inferior tribunal, board or officer exceeded its jurisdiction or otherwise acted illegally."

The petition for the writ of certiorari was filed in this court on June 11, 1946, and since the date of the filing of the petition for the writ is the determining date under the Rule, respondent argues the petition comes too late to review the continuance order

of October 16, 1945. Petitioner argues the illegal act occurred on May 24, 1946, when the respondent refused to set the criminal case for trial.

The continuance order was based on the void adjudication of insanity by the special commission and the void commitment of Ricker to the State Hospital for the Insane at Mount Pleasant. It purported to continue the case only until Ricker "becomes sane." Since there is no legal adjudication that he is insane, the presumption of sanity continues. But in any event, the illegal act here involved was not the entry of this order of continuance. The illegal act was the refusal to set the case for trial. The State of Iowa had a right, after the defendant pleaded not guilty on arraignment, to have the case set down for trial. It was a continuing right. And when the court, on May 24, 1946, refused to set the case for trial, it acted illegally. The record presented to the court at the time it refused to set the case for trial was the record of an indictment, arraignment, and plea of not guilty, with no record of legal adjudication of insanity. It matters not that the State of Iowa could have asserted this right sooner. The illegal act occurred in its denial at the time when it was asserted. For a case somewhat in point, see Gaffney v. Young, 200 Iowa 1030, 1031, 205 N. W. 865, 866. In that case the widow of a policeman whose death occurred in 1912 sought a pension in 1924. The pension board denied her application and its action was held reviewable by certiorari. There it was argued that the widow's "right to a pension accrued at the death of her husband, and more than twelve months before the application for the writ, and the action of certiorari was therefore barred." The statute at that time provided for a twelve-months' period after the alleged illegal act within which the writ could be granted and we held that since the petition for the writ was filed and the writ issued within twelve months after the action of the board denying her application it was timely. See, also, Dayton v. Bechly, 213 Iowa 1305, 241 N. W. 416.

This action is an original action in this court. The petition for the writ asks that the ruling on the motion on May 24, 1946, be annulled "and that trial in the criminal case * * * be completed forthwith." We think it fairly appears that the State is seeking the writ upon the refusal of the trial court to proceed

with the criminal case as required by statute. We will examine the record certified to us to see if there was such a refusal in the ruling on May 24, 1946. The State had a right to go forward with the prosecution it had commenced by indictment in the manner prescribed by statute. As stated, this right is a continuing one. It continues after the entry of an order staying the prosecution if, upon the whole record, it appears the order staying the prosecution should not have been made. The order of continuance was as illegal as the insanity adjudication and commitment upon which it was based. The court order of May 24, 1946, upheld the prior insanity adjudication and commitment as proper and because of such holding the application to set the case for trial was denied. In other words, the respondent judge felt that under the statutes he could proceed in one of two ways. Under one way he would be required to set the case for trial, and under the other way, which he had followed, he would not be required to set the case for trial. Our holding that he had but one way to proceed—namely, to set the case for trial— has the effect of vacating the prior continuance order, but that is so because the illegal act charged against the respondent is of a continuing nature and our holding that he did not have the right to omit the proceedings for trial strikes down all acts performed by the respondent in the furtherance of the illegal proceedings. We are not reviewing an order made and entered more than six months before the petition for the writ was filed in this court. We are reviewing the act of the respondent in failing and refusing to set the case for trial when requested to do so by the State. The court in its ruling on May 24th, justifies its refusal by reciting the proceedings taken. The prior proceedings, including the continuance order, are, of course, examined to see if they furnish a justification for the refusal to set the case for trial. This means no more than a review of the ruling of May 24th, and an inquiry into the proceedings taken to see if these proceedings justify the refusal to follow the command of the statutes as to criminal procedure. We hold they do not. The continuing duty to set the criminal case for trial was present on May 24th. The refusal to perform that duty was illegal. The respondent had no discretion. The earlier proceedings furnished no excuse for the refusal to act in the manner required by statute.

Respondent's action in refusing to set the case for trial will be annulled.

IV. Respondent argues that the continuance order was agreed to by the county attorney and under Rule 183, Iowa Rules of Civil Procedure, it is provided that a continuance "shall be allowed if all parties so agree." And section 780.2, Code, 1946, provides the provisions of civil procedure relative to continuance shall apply to the continuance of criminal actions. The order of continuance in this case does not recite that the county attorney agreed to the continuance nor does the order appear to be based upon an agreement between "all parties." The recitations in the order of continuance show that it was based upon the illegal proceedings resulting in the commitment of Ricker to Mount Pleasant. If the county attorney agreed to anything at the time the order was made, he probably agreed that these proceedings were legal. The proceedings were not legal and the county attorney would have no authority to agree that the prosecution could be discontinued or abandoned because of these illegal proceedings. Section 795.5, Code, 1946.

In a word, the county attorney's agreement to the entry of an order of continuance which the court could not legally enter would not preclude his later action to have the case set down for trial. Our Rule 183, allowing the continuance of civil cases upon agreement of parties, and section 780.2, making the Rules relative to continuance in civil cases applicable to criminal cases, must be applied in the light of other statutes governing criminal procedure. There is no statutory prohibition against parties to civil actions agreeing to continuances but there are many statutes showing the county attorney has no such unlimited right in criminal cases to agree to continuances. See chapter 795, Code, 1946. The situation is not unlike that existing with respect to the necessity for jury trials in criminal cases. Section 780.4, Code, 1946, provides that the provisions relating to "mode and manner" of the trial of civil actions shall apply to criminal trials. While the parties to a civil trial can by agreement waive a jury under section 777.16, Code, 1946, it is provided that in a criminal trial, "Issues of fact must be tried by a jury." We have held the jury cannot be waived by consent of the parties in a criminal trial for an indictable offense. State v. Carman,

63 Iowa 130, 18 N. W. 691, 50 Am. Rep. 741; State v. Williams, 195 Iowa 374, 191 N. W. 790.

The writ of certiorari is sustained. The order of the district court of May 24, 1946, refusing to set the criminal case for trial is annulled and the cause remanded with instructions to forthwith set the criminal case for trial.—Writ sustained; cause remanded.

All JUSTICES concur.