STATE OF IOWA, appellee, v. AGNES HAMILTON, appellant.

No. 48702.

(Reported in 76 N.W.2d 184)

APRIL 4; 1956.

Don H. Jackson, of Council Bluffs, for appellant.

Dayton Countryman, Attorney General, Raphael R. R. Dvorak, Assistant Attorney General, and Matt Walsh, County Attorney, of Council Bluffs, for appellee.

HAYS, J.—This appeal primarily involves the force and effect of section 783.1, Code of 1954.

It is as follows: Doubt as to sanity. "If a defendant appears in any stage of the trial of a criminal prosecution, and a reasonable doubt arises as to his sanity, further proceedings must be suspended and a trial had upon that question." Section 783.2, Code of 1954, prescribes the procedure for the determination of that question.

Defendant was on trial under an indictment charging first-degree murder. During the trial counsel moved for a hearing under section 783.1, Code of 1954. This motion was overruled, and the case submitted to a jury with a resulting verdict of guilty of second-degree murder. A motion for a new trial, rais-

ing this and other issues, was overruled and judgment pronounced. Defendant appeals.

Appellant's husband was shot and killed on May 14, 1953. Within five days thereafter appellant was committed to the State Mental Hospital at Clarinda, Iowa, as authorized by chapter 229, Code of 1950. On May 11, 1954, the County Attorney of Pottawattamie County and counsel representing appellant were advised that she was ready to be discharged. However, as a matter of convenience to the patient to be held in custody at the hospital instead of the county jail, she was actually released on August 30, 1954. The indictment was returned on September 2, 1954. The trial commenced on September 20, 1954.

Saint Bernard's Hospital, a sanitarium for the care of mental and nervous patients, is located at Council Bluffs, Iowa. Drs. J. D. Mahoney and Richard B. Leander, each recognized as an authority on nervous and mental disorders, are on the hospital staff. Following the shooting on May 14, 1953, appellant was at this hospital until removed to Clarinda and was under the observation of these doctors. Upon her discharge from Clarinda, under an arrangement with the sheriff of Pottawattamie County, she was taken to Saint Bernard's Hospital and was placed in Doctor Leander's custody. The record indicates that she remained in his custody during the trial.

Appellant's plea to the indictment was not guilty by reason of insanity, as authorized by sections 777.11 and 777.18, Code of 1954. On the trial, numerous witnesses were called by appellant as to her mental condition on May 14, 1953. Among these witnesses were Doctors Mahoney and Leander. They both described her as a "paranoid individual of schizophrenic variety." During Doctor Mahoney's testimony, he stated: "I feel that Mrs. Hamilton has been and still is insane." Later in his examination, her counsel stated: "We offer to show by this witness that, if permitted to answer the question, his answer would be that Mrs. Hamilton should be committed." Thereafter, in the absence of the jury, the court stated: "The question was raised informally, without any motion, pleading or other paper being filed in the case, that some doubt now exists with reference to the sanity of the defendant under chapter 783 of the Code of Iowa." Then

followed a statement by Doctor Mahoney as to her *then* mental condition which may be summed up in his statement: "Well, not understanding the legal technicalities, my feeling is this. That Mrs. Hamilton is insane; she shouldn't stand trial for murder. And that she is just as insane as she was the day she was sent to Clarinda."

Doctor Leander was called as a witness for appellant. After testimony as to her mental condition on May 14, 1953, and at the request of appellant's counsel, the jury was excused; and testimony as to her *then* sanity was offered. He was asked:

"Q. I want to ask you at this time whether you have had an opportunity to visit with and observe Mrs. Hamilton since she has been staying at Saint Bernard's Hospital since August 30 of 1954? A. I have, sir. Q. What did you observe yourself, Doctor Leander, as to Mrs. Hamilton's condition * * * ? A. * * * It would be my feeling that she apparently is in an exacerbation of her illness and, in all probability, has occurred sometime since the staff at Clarinda found or felt that she was ready to leave the hospital and come up here and stand trial for her present offense or the present allegations against her. Q. * * * Do you feel * * * that Mrs. Hamilton could make a proper defense here for herself? A. I do not feel she could. Q. As far as the flattening affect is concerned, you consider her worse now than when you committed her in May of a year ago? A. I feel that the illness is more in evidence now than at any other time that I have seen her."

In response to questions by the court as to her being capable to make a defense, he stated: "I think she would be incapable to carry on as, should we say, as a witness in her own behalf in that she would relegate her testimony entirely to this system of hers, delusional system of hers, rather than attempt to approach reality and approach the questions on the status that you and I would." He also stated: "I feel that this whole picture is one of grossly defective judgment and that she is incapable, with that type of judgment, of aiding or abetting her defense." This testimony is not disputed.

A motion was then made for a trial as authorized by section 783.2, Code of 1954. It was suggested by the county attorney

that Dr. Norman D. Render, Superintendent of Clarinda Hospital, be allowed to examine her for an hour for the purpose of testifying as to her present mental status. The court stated to her counsel that "defendant could not be compelled to talk to the doctor; and, of course, anything that she may say to him may be used against her. Is there any objection?" Upon being asked by her counsel how she felt about it, appellant stated: "Well, the judge just told me that anything I said might be used against me, so what's your opinion?" Counsel then refused the request stating that one hour was insufficient time to properly appraise her condition.

The court then overruled the motion stating: "It's my opinion that under chapter 738 there has not been sufficient showing, either during the trial or in the absence of the jury to show that there is probable grounds to believe that reasonable doubt exists as to the sanity of the defendant at this time to such an extent that she would be incapable of properly making a defense. The inquiry at this stage of the proceedings is not simply a question of insanity, but a question of whether that insanity goes to such an extent as would make it impossible for her to properly and efficiently defend the charge. * * * It is the opinion of the court that the defendant is now of sufficient sanity to be able to defend herself and understands the nature of the case, and that her rights will not be violated by requiring the trial to proceed."

I. Under this record is appellant entitled to the benefits provided by section 783.1, Code of 1954? We think she is and that the court was in error in overruling the motion for a trial as provided by section 783.2, Code of 1954, and in overruling the motion for a new trial.

It is an established rule of procedure that, generally speaking, one whose sanity is in question is entitled to have that issue determined by a jury. See sections 229.17, 670.9 and 670.13, Code of 1954. It is the universal rule, as old as the common law, that an accused cannot be tried while insane, for the obvious reason that his insanity may render him incapable of making a rational defense. Section 783.1, Code of 1954, which has been in our Codes since 1851 (sections 3260 and 3261) in substantially the same words, merely makes the common law the statutory

law of this State and sets out under what conditions the question of a defendant's *then* sanity may become an issue for a jury.

It says: "If * * * a reasonable doubt arises as to his sanity * * *." While the term "reasonable doubt" would appear to be self-explanatory, it has been variously described by the courts. We think the word "doubt" is an attitude of mind towards the acceptance of or belief in a proposition, theory, or statement in which the judgment is not at rest but inclines alternately to either side. West Jersey Traction Co. v. Camden Horse R. Co., 52 N. J. Eq. 452, 29 A. 333. "Reasonable" means rational, honest, or fair. A "reasonable doubt" may be said to exist when, after a consideration of all the facts, one's mind is left in such a condition that he cannot honestly say he feels an abiding conviction to a moral certainty of the truth of the allegation. Egan v. United States, 52 App. D. C. 384, 287 F. 958.

In State v. Arnold, 12 Iowa 479 at 484, we said: "A doubt must be raised whether at the time there is such mental impairment, either under the form of idiocy, intellectual or moral imbecility, or the like, as to render it probable that the prisoner cannot, as far as may devolve upon him, have a full, fair and impartial trial."

This record shows defendant was committed to a mental hospital within a few days after her husband was shot and killed. She was retained there for more than a year and then released to the sheriff for trial. Instead of being held in jail pending and during trial, she was held in custody at Saint Bernard's Hospital, a mental institution. Two recognized authorities on mental disorders testify that, based upon personal observations, it is their firm conviction that she is now insane and unable to properly make a defense. Under such a record we are of the opinion that a reasonable doubt as to defendant's sanity is presented.

Appellee contends that this issue is for the trial court and we agree. It also states that it rests in the sound discretion of the trial court. It is true there is a discretion vested in the trial court, a judicial discretion. It is a discretion guided by the law so as to do substantial equity and justice. We do not think such a discretion was exercised under this record. See: State v. Demara, 210 Iowa 726, 231 N.W. 337; also annotation 142

A. L. R. 961. A reading of the court's ruling on the motion gives the impression that in so ruling, it was passing upon the ultimate fact of insanity rather than upon the existence of facts sufficient to raise a reasonable doubt thereof.

For failure to have determined the question of defendant's sanity at the time of the trial, the judgment of the trial court must be and is reversed and remanded.—Reversed and remanded.

LARSON, C. J., and BLISS, OLIVER, GARFIELD, WENNERSTRUM, SMITH, and PETERSON, JJ., concur.