Lawrence Herbert HICKEY, Petitioner,

v.

DISTRICT COURT OF KOSSUTH COUNTY, Iowa, Respondent.

No. 53076.

Supreme Court of Iowa.

Feb. 10, 1970.

James H. Andreasen, Algona, for petitioner.

Richard C. Turner, Atty. Gen., and Michael J. Laughlin, Asst. Atty. Gen., for respondent.

LARSON, Justice.

Pursuant to defendant's plea of guilty to the crime of breaking and entering contrary to section 708.8 of the Code of 1966, on September 19, 1967, he was sentenced to the Men's Reformatory at Anamosa, Iowa, for a period of not more than ten years. He appealed, and thereafter filed a petition for writ of certiorari challenging the trial court's jurisdiction to accept his guilty plea under the circumstances revealed to the court. On March 14, 1968, a member of this court granted the writ, and on April 3, 1968, defendant dismissed his appeal. Respondent accepted service, and on December 16, 1969, this matter was submitted to the full bench.

The proposition relied upon by petitioner herein to sustain the writ is that the district court acted illegally by proceeding in the criminal case after it appeared defendant had been duly committed to a mental health institute, which established a reasonable doubt as to the defendant's sanity. In his brief points he asserts: (1) When the court is aware of facts which raise a reasonable doubt as to the defendant's sanity, the question of sanity must be determined before proceeding further. (Section 783.1, Code 1966.) (2) When the defendant had recently been found mentally ill and was committed to and incarcerated in the Mental Health Institute and had not been discharged or released by it, a reasonable doubt exists as to the defendant's sanity. (3) It is not necessary for the defendant in a criminal case to plead insanity where there is a reasonable doubt as to his sanity and the court is aware of the facts giving rise to the reasonable doubt. (4) For the court to proceed in a criminal case after being aware of facts which establish reasonable doubt as to the defendant's sanity is illegal and an abuse of the court's judicial discretion.

Respondent's counsel denies with vigor the assertions in brief points (1) and (2) and contends the trial court was fully and adequately informed as to defendant's mental condition at the time it accepted his plea of guilty, and that its action in failing to find such reasonable doubt is supported by substantial evidence of defend-

ant's release and competence to participate in these proceedings. We cannot agree.

■ I. Section 783.1, Code 1966, provides:

"If a defendant appears in any stage of the trial of a criminal prosecution, and a reasonable doubt arises as to his sanity, further proceedings must be suspended and a trial had upon that question."

This section of the Code is mandatory. State v. Gaffney, 237 Iowa 1399, 1403, 25 N.W.2d 352, 354. Except as to who decides when and under what circumstances a reasonable doubt arises, it is very clear. We have considered this statute in the rather recent cases of State v. McCollom, 260 Iowa 977, 987, 151 N.W.2d 519, 525; State v. Hamilton, 247 Iowa 768, 76 N.W.2d 184, 187; and State v. Bruntlett, 240 Iowa 338, 350, 354, 36 N.W.2d 450, 455, 457.

■ II. It being well established that the trial court has sole jurisdiction of one charged by information or indictment with a crime, a presumption arises that it retains jurisdiction until something is shown which legally causes its loss. The burden, of course, is upon one who contends that the court lost jurisdiction to overcome that presumption and prove by a preponderance of the evidence that the court acted illegally in proceeding further with the matter being considered. 46 Am.Jur.2d, Judgments, §§ 30, 31, pp. 335, 336.

■ By the form of this action petitioner challenges the right of the trial court to proceed with the criminal matter being considered, and thus assumes the burden to show in what manner the trial court acted illegally in failing to find that reasonable doubt existed as to defendant's mental capacity to participate in his defense meaningfully.

■ III. When the circumstances suggest a question of reasonable doubt as to the accused's sanity, as they do here, it is initially for the trial court to determine from sufficiently revealed circumstances whether a reasonable doubt exists as to the accused's mental capacity or ability to appreciate the charge against him, understand the proceedings, and aid in conducting his defense. State v. McCollom, supra; State v. Bruntlett, supra, and cases cited therein. Although we must look to the sound discretion of the trial court to resolve that question before further proceedings are taken, this vested discretion is a judicial discretion and must be guided by the law so as to do substantial equity and justice. State v. Hamilton, supra.

■ IV. We have often held "sanity", to which section 783.1 refers, is one's mental capacity at some stage of the trial. The test of insanity under this section, we have said, is defendant's mental capacity to appreciate the charge against him, understand the proceedings, and conduct his defense. State v. McCollom, supra, 260 Iowa 977, 987, 151 N.W.2d 519, 524.

■ "Reasonable doubt" as used in section 783.1 exists when, after consideration of all the relevant facts, one's mind is left in such a condition that he cannot honestly say he feels an abiding conviction to a moral certainty as to the truth of a matter, and "doubt" is an attitude of mind toward the acceptance of or belief in a proposition, theory, or statement in which the judgment is not at rest but inclines alternately to either side. State v. Hamilton, supra, 247 Iowa 768, 773, 76 N.W.2d 184, 186.

■ In this connection we also note that, in considering the term "reasonable doubt", we are dealing with probabilities. The words are not technical words, although in resolving the question testimony of professional technicians may be necessary. The words are factual and must be resolved by practical considerations of everyday life on which reasonable and prudent men, not just legal or professional experts, may act.

Reasonable doubt must, therefore, be determined by a consideration of all the facts and circumstances obtained from reasonably trustworthy sources and which are in themselves sufficient to warrant a man of reasonable caution to believe the accused in a criminal matter can or cannot appreciate the charge against him, understand the proceedings, and help conduct his defense. Past commitments to a mental hospital, releases, and discharges, as well as medical or expert opinions, may be considered in the determination of such reasonable doubt, but they in themselves are not conclusive of the issue before the court.

V. Should it appear that the defendant has been committed to and treated in a mental health institute as mentally ill, a showing as to the extent and seriousness of that illness is necessary before the trial court in a criminal matter can determine, in the first instance, whether there is reasonable doubt as to defendant's capacity to participate meaningfully in his trial or enter a plea of guilty to the crime charged.

Of course, when an official body finds that one is mentally ill, we must indulge in the presumption that that illness continues until something is shown sufficient to overcome that presumption, such as a release, discharge, or other competent evidence of recovery. It has been held that a person adjudged to be insane is presumed to continue as such until the contrary is shown to appear. Carr v. Carr, 209 Iowa 160, 165, 225 N.W. 948, 950; Hazen v. Donahoe, 208 Iowa 582, 584, 226 N.W. 33, 34; Weber v. Chicago R. I. & P. R. Co., 175 Iowa 358, 382, 151 N.W. 852, 861 L.R.A.1918A, 626; annotation, 68 A.L.R. 1309, 1315; annotation, 7 A.L.R. 568, 588. The same rule must be applied to those properly committed as mentally ill.

VI. The presence of a mental illness generally does not equate with incompetency to stand trial. Feguer v. United States, 302 F.2d 214, and citations. Even an expert's opinion on competency rises no higher than the reasons on which it is based, and is usually not binding upon the trier of the facts. See Dusky v. United States (8th Cir.), 295 F.2d 743 (cert. den. 368 U.S. 998, 82 S.Ct. 625, 7 L.Ed.2d 536).

In 44 C.J.S. Insane Persons § 127, p. 284, it is stated: "The test of insanity of an accused precluding his being put on trial for a criminal offense is usually stated to be his capacity to understand the nature and object of the proceedings against him and to conduct his defense in a rational manner; and, if he passes this test, he may be tried, although on some other subjects his mind may be deranged or unsound." See statements to the same effect in Smith v. United States, 267 F.2d 210, 211, and Lee v. Wiman, 280 F.2d 257, 265.

Thus, unless the statute deprives the trial court of jurisdiction to put one on trial for a criminal offense when it appears he has been committed to a mental health institute, which our statute does not, it would appear to be the duty of the court to satisfy itself that no reasonable doubt exists as to the accused's mental capacity to understand the nature of the proceedings against him and appreciate the consequences of his guilty plea. Certainly here it was necessary to have a direct evaluation of defendant's mental illness, either by the doctors who examined and treated him at the Mental Health Institute or by some other qualified person or persons who had recently examined him, before the court could resolve the question of reasonable doubt as to defendant's mental capacity to enter a plea of guilty.

VII. The facts and circumstances before the court as revealed by this record are not in dispute. It appears that Lawrence Herbert Hickey, age 18 years, was charged on August 11, 1967, by county attorney's information with the crime of breaking and entering contrary to the provisions of section 708.8 of the Code. On

arraignment, at his request he was furnished court-appointed counsel and entered a plea of not guilty. On September 19, 1967, he again appeared in court with his attorney and asked to withdraw his not guilty plea and enter a plea of guilty to the crime charged. Before accepting the plea of guilty the trial court interrogated the defendant at length as to his understanding of the charge, his right to a trial by jury with witnesses in his behalf, the possible penalty involved, and other relevant matters including his retention and treatment at the mental institute at Cherokee, Iowa.

The court inquired as to the present condition of defendant's health. Defendant said it was fair but that he did have a condition like osteomyelitis in one of his legs as a result of a hunting accident four years before. Asked if he had had any additional trouble with his health, defendant answered in the negative but acknowledged he had been taking the drug "mellaril", a tranquilizer, three, four or five times a day. When the court inquired as to the reason for that medication, defendant said he did not know but explained that he had been taking it while he was at Cherokee and that the sheriff had been giving it to him since his return to the sheriff's custody. He told the court that he felt all right at that time, that the drug did not have any effect on his ability to understand and comprehend what was being discussed in his presence, and that while the drug was supposed to keep him calm it had no effect on him outside of making him sleepy and his mouth dry. He added he was not then sleepy and understood why he was there and what he was doing.

Defendant's attorney inquired whether this tranquilizer had been prescribed by a doctor and, when defendant said he did not know, the sheriff offered to explain. He told the court that the day before this hearing he had stopped at the Cherokee Mental Health Institute to which defendant had been committed on August 22, 1967, after a display of violence in his jail cell the day before, and that he had talked to Dr. Brinegar and Dr. Ginzberg. The latter gave him the medication to be administered to defendant, "one pill before each meal", which he said was the same as that given him at the Institute.

Defendant acknowledged treatment at the Institute, after which the court asked if the treatment had been completed, and defendant replied: "I guess it was, you might say, yes." But he also told the court he had run away from the Institute and gone to Sioux City. After thinking over the situation, he stopped at a house and had someone call the sheriff, who then returned him to Algona.

The court then made adequate inquiry as to defendant's education, home life, and other activities.

In connection with defendant's commitment to and treatment at the Cherokee Mental Health Institute the record discloses that the sheriff on August 22, 1967, filed an information in the district court claiming defendant was afflicted with mental illness and was a fit subject for custody and treatment in the Mental Health Institute. A physician was duly appointed to examine Lawrence H. Hickey and make a report to the Commission of Hospitalization of Kossuth County. Pursuant to this examination Dr. Koob, M.D., certified "that in his judgment said person is mentally ill and a fit subject for custody and treatment in the Mental Health Institute." In his answers to certain questions attached to the report the only one relative to violence was as follows: "Q. Has suicide ever been attempted? If so, in what way? Is the propensity now active? A. Present episode is a suicidal gesture he, with a razor blade, slashed the right arm 6 or 7 times—none of the injuries apparently too severe, and then fought with 3 or 4 officers until he could be sedated with IV amatal."

Defendant was represented before the commission by a court-appointed attorney, and on the same day the commission is-

sued an order to the superintendent of the Mental Health Institute stating inter alia that after investigation and hearing the Commission of Hospitalization "finds that Lawrence H. Hickey is mentally ill and orders the superintendent of the Mental Health Institute to receive said person for observation, treatment and recommendation." Receipt of the party was acknowledged August 23, 1967.

However, we find no evaluation of defendant's mental illness and no evaluation of defendant's present condition by a qualified doctor or Mental Health Institute official. Neither do we find a release or discharge from the Institute nor any expression as to the completion of his treatment except defendant's own guess that it had been completed. Although it did appear the Institute officials did not require his return for treatment, this was far from adequate information for a determination of defendant's mental capacity to participate meaningfully in his defense or enter a valid plea of guilty to the offense charged.

It is the State's contention that, although no formal discharge from the Mental Health Institute at Cherokee appears, the authorities' acts clearly indicate that defendant was no longer in need of the Institute's care and was possessed of adequate mental capacity to stand trial on the crime charged, that by not asking the sheriff to return him to the Institute when he was apprehended it appears these authorities considered him to be recovered, and that by permitting the retention of defendant in the jail in the county where he was charged and prescribing tranquilizers for him this action substantially met the requirements of section 226.27. As indicated, we cannot agree.

■ Although compliance with the provisions of sections 226.16 and 226.27 by the Institute is important, the failure of the Institute officials to require his return to the Institute cannot be determinative of the issue before the court in these proceedings. Its duty was to determine whether, under all the facts and circumstances presented, there was reasonable doubt that defendant at that time had the mental capacity to participate in his trial in a meaningful manner. The issue here was not as to his sanity or insanity, a designation which may or may not equate with mental illness. Section 229.40 of the Code now provides: "The term 'mental illness' as used in this chapter includes every type of mental disease or mental disorder." Since defendant was not committed as insane but only as mentally ill, a designation of uncertain degree, a showing as to the extent and seriousness of that illness was of vital importance to the court.

■ VIII. Applying the prevailing rules to the facts and circumstances before the trial court herein, we are convinced it was as a matter of law required to find that the question of reasonable doubt as to defendant's sanity was not resolved, and that his plea could not then be accepted. Due to this failure, we must hold the trial court did abuse its judicial discretion in resolving the reasonable doubt issue in favor of continuing the proceedings.

In any event, we are satisfied, in order to resolve the reasonable doubt issue, the court here was not possessed of sufficient and satisfactory evidence of the accused's mental ability to participate meaningfully in the proceedings before it. Thus, the court did not have jurisdiction to accept his plea and render judgment in the matter. The writ must, therefore, be sustained and the matter remanded to the district court for further proceedings in accordance with this opinion.

Writ sustained.

All Justices concur.