# IN THE COURT OF APPEALS OF IOWA

No. 18-1342
Filed January 23, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**WESLEY VINCENT SWANSON,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dickinson County, Nancy L. Whittenburg, Judge.

Wesley Swanson appeals his convictions of third-degree burglary and second-degree theft, following a jury trial. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, (until withdrawal) and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee.

Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**DOYLE, Presiding Judge.**

Wesley Swanson appeals following his convictions for several offenses, including third-degree burglary and second-degree theft. He argues the district court erred when it overruled Swanson's motion to evaluate Swanson and determine his competency to stand trial. Swanson also contends his trial counsel rendered ineffective assistance because he did not request expert-witness testimony on the unreliability of eyewitness accounts. Swanson also challenges the sufficiency and the weight of the evidence to support his burglary and theft convictions. Upon our review, we affirm.

### I. *Background Facts and Proceedings*.

Tom Struthers, his wife, and children, along with Struthers's sister, Casandra Struthers, resided in an Arnolds Park, Iowa, home. On October 12, 2016, Casandra was staying in the home alone while Tom and his wife were out of town. That morning, upon returning to the house after running an errand, Casandra observed that the children's bicycles were outside, which she found odd because the children stayed the night at their grandparents' home and there was no reason for the bikes to be outside. She phoned the children's grandparents to see if they had been back to the house for some reason and learned they had not. Casandra went into the garage and noticed it was in disarray. Although usually locked, Casandra found the door into the garage unlocked.

Casandra went to the police department and reported that she believed someone had entered the garage. She spoke with Police Chief Alan Krueger and told him of items she knew were missing, including a new garbage bin. The new bin was part of a city-wide transition to an automated garbage system.

Voanne Edwards and her son, Brian, lived across the street from the Struthers's home. Early in the morning of October 12, 2016, while she was drinking her coffee, Voanne heard a noise outside. She looked out her window and saw the light was on in the Struthers's garage. Although the light being on was unusual, Voanne didn't think much of it believing the Struthers just accidently left it on. Around six a.m., Voanne heard another noise. She looked out again and "saw somebody pulling the garbage can with a tub on top from the [Struthers's] driveway going up to the west on the road." She moved to look out her "living room window because it looked like the tub on top had fallen," and she saw "whoever it was had bent over and was picking things up out of the street." She continued to watch and saw the person pick up the tub then go up another street. Voanne observed the person return a few minutes later and retrieve the garbage bin. He "pulled it back up this way, going—going to go back to Barton Drive but stopped right here by the stop sign. (Indicating throughout)."[1] She testified a street light "sits right just off of my—you can see it right here (indicating). It sits right off my driveway . . . . Right across the street from the intersection." Although it was dark out, Voanne could see the person was wearing dark clothing and a tan fishing hat with a wide two or three-inch brim. While the person was pulling the garbage bin away, he looked right at Voanne from about forty feet away, and Voanne got a good look at his face.

---

[1] During her testimony, Voanne stepped down from the witness stand and approached what was apparently an enlargement of a map or aerial photograph of the area. She pointed to the demonstrative many times as she testified. Casandra and Tom Struthers also referred to the demonstrative during their testimony. Although the jury had the benefit of viewing the demonstrative as well as Voanne's, Casandra's, and Tom's gestures during their testimony, we do not. The demonstrative was not entered into evidence or furnished to us.

Voanne did not know the Struthers well and was unsure if the person was doing work for them, so she didn't know whether anything was amiss. Voanne told Brian about what she had observed that morning and advised him to make sure there was nothing sharp left in the street that would puncture a tire.

Later that day, Casandra spoke with Brian when he was out in his driveway, and she told him about the break-in. Brian relayed what Voanne had seen that morning. Casandra then talked to Voanne. Voanne told Casandra she saw the person's face. Casandra then told officers what she had learned from Voanne.

That day and the next, Chief Krueger noticed a new garbage bin at a house a block away from the Struthers's house, tucked away but just visible in a fenced-in area.[2] The house is two houses down from the police station, and Chief Krueger drove past it often. Chief Krueger knew that Tina Ritzer and Wesley Swanson lived at the house. Knowing that not all residents had opted to get a new bin for the transition to the automated system, Chief Krueger checked to see if Ritzer and Swanson were given a new bin. He found out they had not. He then learned the serial number on the bin found at Ritzer and Swanson's home matched the bin for the Struthers's address.

Assistant Chief Kleve began working on the case a few days later. He presented a photo lineup to Voanne on October 18, 2016, containing eight photos, including Swanson's picture. After looking at the lineup for a bit, Voanne identified Swanson as the person she observed on the morning of October 12, 2016.

A search warrant was executed at Ritzer and Swanson's home. The

---

[2] Like Voanne Edwards and Casandra and Tom Struthers, Chief Krueger also referred to the illusive demonstrative many times during his testimony.

garbage bin was found in the home. Multiple items stolen from Struthers's garage were also found in the home. Swanson's ID, mail addressed to Swanson at the home's address, legal papers addressed to Swanson, and male clothing were also found in the residence. When in the booking area, Swanson gave the home's address to the jailer. Swanson was charged by trial information with various offenses, including third-degree burglary and second-degree theft.

A month before trial, Swanson moved for a partial waiver of his right to counsel. Swanson requested he be permitted to represent himself, with his appointed counsel serving as "standby counsel." Less than two weeks before the trial was to begin, Swanson's counsel filed a "motion to determine competency in defendant." Swanson's attorney stated:

> It reasonably appears to the undersigned, and to all others who have participated in the judgment, prosecution, and defense of [Swanson] that he is suffering from a mental health disorder that prevents him from appreciating the charge, understanding the proceedings and assisting effectively in his defense pursuant to Iowa Code [s]ection 812.3 [(2016)].
> That the undersigned has communicated with family members of [Swanson] who confirm that [Swanson] has a diagnosed mental health condition.
> That this mental health condition has manifested itself throughout these proceedings, including, but not limited to [Swanson's behavior at and in various hearings, pretrial conferences, other criminal proceedings, jail, and telephone communications].
> . . . .
> That the undersigned has received conflicting and contradictory advice and counsel in connection with the charges against [Swanson] and reasonably believes that if untreated [Swanson's] behavior will prejudice him before a Judge or jury [at trial].
> That it is necessary for [Swanson] to be psychiatrically evaluated, at State expense, and to receive appropriate medication to assist [Swanson] in the management of his mental health condition.

Following a hearing, the district court denied the motion.

Trial was held as scheduled. Following the trial, the jury found Swanson guilty on all counts. He was sentenced to prison. Swanson appeals.

## II. Discussion.

Swanson raises three issues on appeal. First, Swanson argues the district court erred when it overruled Swanson's motion to evaluate Swanson and determine his competency to stand trial. Second, Swanson contends his trial counsel rendered ineffective assistance because he did not request expert-witness testimony on the unreliability of eyewitness accounts. Finally, Swanson asserts there was insufficient evidence to support his burglary and theft convictions.

### A. Motion for Competency Evaluation and Hearing.

Swanson contends the district court should have granted his motion for an evaluation and determination of his competency to stand trial. "Under the United States Constitution, the United States Supreme Court has declared that the conviction of an incompetent defendant violates due process." *State v. Einfeldt*, 914 N.W.2d 773, 778 (Iowa 2018) (citing *Pate v. Robinson*, 383 U.S. 375, 378 (1966)). "When a constitutional question is raised, our review of a district court decision regarding whether to order a competency evaluation is de novo." *Id*. at 780.

Iowa Code section 812.3(1) provides in relevant part:

> If at any stage of a criminal proceeding the defendant or the defendant's attorney, upon application to the court, alleges specific facts showing that the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense, the court shall suspend further proceedings and determine if probable cause exists to sustain the allegations.

"Probable cause exists for a competency hearing when a reasonable person would believe that there is a substantial question of the defendant's competency." *Einfeldt*, 914 N.W.2d at 779.  However:

> [A] past history of mental illness, without more, is insufficient to trigger a competency hearing under Iowa Code section 812.3 or due process.  [*Jones v. State*, 479 N.W.2d 265, 270 (Iowa 1991)]; *Hickey v. Dist. Ct.*, 174 N.W.2d 406, 410 (Iowa 1970).  The question is one of present competency, not past malady.  Further, even the presence of mental illness at trial, in and of itself, is not necessarily sufficient to trigger the requirement of a competency hearing under Iowa Code section 812.3 and due process.  *See State v. Myers*, 460 N.W.2d 458, 460 (Iowa 1990); *State v. Lucas*, 323 N.W.2d 228, 233 (Iowa 1982).  The present mental illness must be sufficient to give rise to a serious question as to whether the defendant meaningfully understands the charges and is capable of meaningfully assisting in the defense.  Iowa Code § 812.3; *Myers*, 460 N.W.2d at 460.

*See id.* at 783 n.3

Here, the district court considered Swanson's counsel's observations of Swanson's behavior, along with information relayed from Swanson's family, as well as Swanson's own testimony.  The court noted Swanson testified he had been diagnosed with bipolar disorder but no medical records were presented to show a current diagnosis or a need for medication.  The court considered Swanson's behaviors during court proceedings and prior depositions.  The court found Swanson was organized during the depositions he participated in and Swanson's demeanor was respectful and polite.  The court also observed Swanson in pretrial proceedings and found Swanson "was rational, passionate about resolving his charges through trial, respectful of the proceedings, and cooperative in all respects with the proceedings."

Upon our de novo review of the record, we agree with the district court's conclusion a competency evaluation was not warranted. Based on the record, we do not find a reasonable person would believe that there was a *substantial* question of Swanson's competency. While Swanson was outspoken about his counsel's representation and trial strategy, Swanson's actions and past diagnosis without more do not establish probable cause a competency evaluation. So we agree with the district court's ruling overruling Swanson's motion to evaluate Swanson and determine his competency to stand trial.

### B. Sufficiency- and Weight-of-the-Evidence Challenges.

Swanson raises both sufficiency-of-the-evidence and weight-of-the-evidence arguments. A conviction rests on insufficient evidence when, even after viewing the evidence in the light most favorable to the State, no rational factfinder could have found the defendant guilty beyond a reasonable doubt. *See State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003). If the evidence viewed in the light most favorable to the State "can convince a rational jury that the defendant is guilty beyond a reasonable doubt," the evidence is considered substantial. *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017) (citation omitted). "We draw all fair and reasonable inferences that may be deduced from the evidence in the record." *State v. Meyers*, 799 N.W.2d 132, 138 (Iowa 2011). "In assessing the sufficiency of the evidence, circumstantial evidence is equally as probative as direct." *Id.* We review sufficiency of the evidence claims for correction of errors at law. *See State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017).

On the other hand, weight of the evidence refers to a determination that a greater amount of credible evidence supports one side of an issue than the other.

*See State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006). "We review a district court's ruling as to whether a verdict was contrary to the weight of the evidence for abuse of discretion." *State v. Neiderbach*, 837 N.W.2d 180, 190 (Iowa 2013). "We will find an abuse of discretion when 'the district court exercises its discretion on grounds or for reasons that were clearly untenable or unreasonable.'" *State v. Headley*, 926 N.W.2d 545, 550 (Iowa 2019) (quoting *State v. Thompson*, 866 N.W.2d 915, 918 (Iowa 2014)). "[A]ppellate review is limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *Reeves*, 670 N.W.2d at 203.

Here, viewing the record evidence in the light most favorable to the State, substantial evidence supports Swanson's challenged convictions. Even excluding Voanne's identification of Swanson, the evidence establishes the Struthers's garbage bin and multiple items taken from the Struthers's garage were found inside Swanson's residence. There was no evidence, beyond Swanson's self-serving testimony, that the bin and other evidence were retrieved from a nearby dumpster. "In our system of justice, it is the jury's function to determine the credibility of a witness." *State v. Dudley*, 856 N.W.2d 668, 677 (Iowa 2014). "The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive." *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993). The jury did not believe Swanson's account. We conclude there is substantial evidence in the record to support the jury's verdict finding Swanson was guilty of third-degree burglary and second-degree theft—even without Voanne's identification of Swanson.

We also find no abuse of discretion by the district court in denying Swanson's motion for a new trial. Here, the district court scrutinized all of the testimony in its findings of fact. The district court had wide discretion in deciding the motion for new trial. *See State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). The court reasoned:

> [T]he jury had the opportunity to weigh the credibility of each witness, including Voanne Edwards, and in doing so they had an opportunity to determine whether or not other evidence corroborated the testimony of Voanne Edwards and made her believable or not believable. Other evidence was introduced and admitted that corroborated Ms. Edwards'[s] testimony including but not limited to evidence found in [Swanson's] possession during execution of a valid search warrant as well as the testimony of the occupant and the absent owner of the real property from which the personal property in this case was stolen. The court has not been presented with any compelling argument why it should disturb the jury's findings as to the credibility and believability of an eyewitness to the crime.

We find no reason to disturb the court's ruling.

### C. Expert Testimony Concerning Eyewitness Identification.

Swanson also argues his trial counsel rendered ineffective assistance because counsel did not request expert-witness testimony on the reliability of eyewitness identification. "To prevail on a claim of ineffective assistance of counsel, the claimant must show counsel failed to perform an essential duty and prejudice resulted. *State v. Ary*, 877 N.W.2d 686, 704 (Iowa 2016); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "To satisfy the second prong of the Strickland test, the claimant must prove by a reasonable probability that, but for counsel's failure to perform an essential duty, the result of the proceeding would have been different." *Ary*, 877 N.W.2d at 705. Our review is de novo. *See id.* at 704.

Although Voanne's identification of Swanson in the photo lineup was an important component of evidence, it was not the only evidence supporting Swanson's conviction. In fact, as set out above, even without Voanne's identification, substantial evidence supports Swanson's convictions. Thus, even assuming without deciding Voanne's identification was so unreliable that Swanson's counsel breached an essential duty in failing to acquire expert testimony on the reliability of eyewitness identifications, Swanson cannot establish he was prejudiced given the record evidence. Swanson has failed to show there is a reasonable probability that, but for counsel's failure to call an expert witness, the result of the proceeding would have been different. Swanson has failed to meet his burden to prove his trial counsel rendered ineffective assistance.

### III. Conclusion.

Upon our de novo review of the record, we agree with the district court's ruling overruling Swanson's motion to evaluate and determine Swanson's competency to stand trial, and we find Swanson failed to establish his trial counsel was ineffective. We also conclude substantial evidence supports Swanson's challenged convictions and the district court did not abuse its discretion in denying Swanson's motion for a new trial. So we affirm Swanson's challenged convictions in all respects.

**AFFIRMED.**