**STATE of Iowa, Appellee,**

v.

**Douglas E. STODDARD, Appellant.**

No. 54121.

Supreme Court of Iowa.

Oct. 13, 1970.

L. M. Goldblatt, Sioux City, for appellant.

Richard C. Turner, Atty. Gen., Max A. Gors, Asst. Atty. Gen., Edward F. Samore, County Atty. of Woodbury County, and E. Kevin Kelly, Asst. County Atty., for appellee.

STUART, Justice.

Defendant has appealed from the judgment and sentence entered on his plea of guilty to the crime of uttering a forged instrument in violation of section 718.2, Code of Iowa claiming the record and information obtained by the trial court in the presentence report raised such doubt as to defendant's mental capacity that the trial court (1) should not have accepted his plea of guilty without obtaining additional information, or (2) could not have accepted the plea of guilty without submitting the question of defendant's sanity to a jury under section 783.1, Code of Iowa, which provides: "If a defendant appears in any

stage of the trial of a criminal prosecution, and a reasonable doubt arises as to his sanity, further proceedings must be suspended and a trial had upon that question."

I. "Sanity" refers to one's mental capacity at some stage of the trial. The test of insanity under this section, we have said, is defendant's mental capacity to appreciate the charge against him, understand the proceedings, and aid in the conduct of his defense. Hickey v. District Court of Kossuth County (Iowa, 1970), 174 N.W.2d 406, 409.

"Reasonable doubt" must be determined "by a consideration of all the facts and circumstances obtained from reasonably trustworthy sources and which are in themselves sufficient to warrant a man of reasonable caution to believe the accused in a criminal matter can or cannot appreciate the charge against him, understand the proceedings, and help conduct his defense. Past commitments to a mental hospital, releases, and discharges, as well as medical or expert opinions, may be considered in the determination of such reasonable doubt, but they in themselves are not conclusive of the issue before the court." Hickey v. District Court, supra, 174 N.W.2d at 410.

"[S]ubnormal intelligence is merely a factor to be considered" in determining whether or not an accused is competent to stand trial. It "will not in itself bar trial". 21 Am.Jur.2d, Criminal Law, § 63, p. 145. State v. Bailey, 233 La. 40, 96 So.2d 34, 69 A.L.R.2d 340, 344–345.

It is initially for the trial court to determine whether circumstances have arisen which suggest the existence of a reasonable doubt as to the accused's sanity. This is an exercise of judicial discretion that "must be guided by the law so as to do substantial equity and justice". Hickey v. District Court, supra, 174 N.W.2d at 409. State v. Hamilton, (1956), 247 Iowa 768, 773, 76 N.W.2d 184, 187.

In attempting to show that the trial court abused its discretion, the burden is

on the appellant to prove by a preponderance of the evidence that the court acted illegally in proceeding with the acceptance of the plea and the sentencing. Hickey v. District Court, supra, 174 N.W.2d at 409.

■ Though the matter is ordinarily raised by defense counsel, our statute imposes a duty on the court to act on its own motion if a doubt of defendant's present sanity arises. However, failure of defense counsel to raise the question is a circumstance that may be considered in deciding whether the trial court acted properly in not ordering an inquiry on its own motion. Magenton v. State (1957), 76 S.D. 512, 81 N.W.2d 894, 897; see also State v. Mc-Collom (1967), 260 Iowa 977, 987, 151 N.W.2d 519, 524.

We might best define the issue confronting us by eliminating two associated issues that are not urged here.

It is not contended, nor indeed on this record could it be contended, that the trial judge did not scrupulously guard the defendant's right to plead not guilty. The requirements of State v. Sisco (Iowa, 1969), 169 N.W.2d 542, were carefully fulfilled.

No motion was made under section 783.1 for a hearing to determine defendant's sanity and the record does not indicate the court on its own considered whether sufficient facts existed to raise a reasonable doubt as to defendant's sanity. No finding or ruling was made on this issue. We do not, therefore have to determine whether the trial court abused its discretion in holding there was no probable grounds to believe there was a reasonable doubt as to defendant's sanity. This was the issue in State v. Hamilton, supra.

The issue here is whether the record and information before the trial court during these proceedings was sufficient to raise such a reasonable doubt as to defendant's mental capacity to appreciate the charge against him, understand the proceedings and aid counsel in conducting his defense that the trial court should have on his motion solicited further evidence on that issue before accepting the plea of guilty or sentencing this defendant.

We must therefore look at the matters before the trial court during these proceedings.

On October 20, 1969, defendant was charged by information with the crime to which he ultimately pleaded guilty. On October 22, the court appointed counsel for defendant, and he was released on bond. Defendant appeared in court the next day and formal arraignment was waived. On November 4, 1961, defendant and his counsel appeared before the trial judge and entered a plea of not guilty. Trial was set for December 8, 1969. On that date defendant and his counsel appeared before the judge and defendant requested that his plea of not guilty be withdrawn. The trial court accepted the withdrawal of the plea and carefully questioned appellant concerning his proposed guilty plea. When defendant stated he did not think he was guilty of the crime charged, the court continued the case. Within the hour defendant and his counsel again appeared before the trial court to plead guilty.

Under questioning by the court, defendant admitted taking Reynold LaFerriere's blank check, making it payable to himself, signing LaFerriere's name to it, endorsing it and passing it at Pope's Food Market. He reaffirmed his guilt and stated he misunderstood the trial court about the matter which led to the assertion he was not guilty earlier in the day. The trial court accepted the guilty plea, set January 2, 1970 as the time for sentence and ordered a pre-sentence investigation.

On January 2, 1970 defendant reaffirmed his plea of guilty and acknowledged that he understood the range of penalty included a ten year penitentiary sentence or imprisonment in the county jail not exceeding one year or a fine not exceeding one thousand dollars. The court questioned him about his statement to the in-

vestigating parole officer to the effect that he planned on receiving a six months suspended jail sentence and a year's probation. The court ascertained by questions that no such promise had been made and defendant had not told the truth about it because he was upset and scared.

The pre-sentence report revealed defendant's parents were mentally retarded as well as his eight siblings, some quite severely. Defendant's I.Q. tested 78 in 1962 and 75 in 1966. The family and personal history are very depressing.

The report of the family counselor contained the opinion that defendant is emotionally unstable and academically and mentally retarded. He reacts impulsively in situations of stress using poor judgment. He attempts to gain recognition by lying. The report concludes:

"Regardless of what the outcome of Doug's sentencing, I feel that the prognosis for the boy is very poor. Without too much question I feel that Doug should be placed in a mental health institute, however, with this type of character disorder it appears that mental health institutes are either unwilling or unable to treat the patients effectively. I also feel that, at present, this community has little to offer Doug as he has exhausted most resources."

Counsel for defendant in his remarks referred to defendant's limited I.Q. and stated he had planned to call Mr. Rogers from the county attorney's office to testify "he doubts that this defendant has the mental ability to realize the difference between the truth and a lie" and Dr. D. B. Blume to testify "that as to truth and veracity, in his opinion and on other subjects, this defendant * * * needs psychopathic attention if he was to be rehabilitated to society". Neither was called to testify at the pre-sentence hearing.

Defendant was given the opportunity to speak and said: "I have nothing to say except I am planning on going to work Monday. I would like to give back the $60.00." The trial court sentenced defendant to the State Reformatory at Anamosa for a period not to exceed ten years.

The question is similar to the one we considered quite recently in Hickey v. District Court of Kossuth County (Iowa, 1970), 174 N.W.2d 406. There we held that where it appeared the accused had been committed to a mental health institute while in jail on the charge in question, the lack of a direct evaluation of defendant's mental illness by the doctors who examined and treated him at the mental health institute or other qualified persons deprived the trial court of jurisdiction to accept the plea of guilty. The case was reversed and remanded for further proceedings so the court could obtain professional evaluation of defendant's mental illness in order to have sufficient information to resolve for itself whether such reasonable doubt existed as to defendant's sanity that the matter should have been submitted to a jury under section 783.1.

The fact that defendant was under commitment to a mental institution at the time of the proceedings in Hickey should have raised a question in the court's mind as to whether a reasonable doubt existed as to defendant's sanity. With this fact before him he could not ignore the issue nor make a ruling on it without further evaluation of defendant's mental condition.

██ Nothing in the record here so strongly suggests the possibility that defendant was unable to understand the proceedings or aid in his defense. We believe the failure of defendant's counsel to move for a determination of defendant's mental capacity is a significant factor. There was no claim of incompetency of counsel.

In Magenton v. State (S.Dak., 1957), 81 N.W.2d 894, 897, it is stated that: "The fact that counsel for the accused does not request a trial of this issue is significant. It is a circumstance which a trial judge is entitled to consider in deciding whether he should order the inquiry. It is also of persuasive significance when the trial court's failure to order an inquiry on its own motion is under review."

**452**

In State v. McCollom (1967), 260 Iowa 977, 987, 151 N.W.2d 519, 524, we refer to the fact that "Neither defendant nor his counsel made such a claim to the trial court and evidently did not desire to do so", inferring this is a factor to be considered. In McCollom we also stated: "Defendant and his counsel seem to have concluded it was wise not to request a separate trial under 783.1 but rather to try for a bench parole which was denied". The same is no doubt true in the instant case.

The facts should clearly suggest a question of defendant's mental capacity before we reverse the trial court for failing to determine whether a reasonable doubt exists on his own motion. Otherwise, in order to protect the record in most pleas of guilty, the trial court would have to resolve the issue and still be faced with the contention that it did so on insufficient evidence. The record here is not so different from that made in many pleas and sentencing procedures that the court should have made a determination on the existence of a reasonable doubt as to defendant's sanity.

"The trial court observed defendant when his plea of guilty was entered, throughout the hearing and when sentence was pronounced. It is evident he felt nothing was shown to raise a reasonable doubt as to defendant's then sanity. Determination of whether there was such doubt rested in the court's sound judicial discretion." State v. McCollom, supra. It was not abused here.

██ II. Defendant also urges the issue of defendant's mental capacity to stand trial should have been submitted to the jury. Our holding in division I makes extensive comment on this claim unnecessary. However, we have no hesitancy in stating that the trial court would not under this record have abused its discretion in finding the record was insufficient to raise a reasonable doubt as to defendant's mental capacity to appreciate the charge against him, understand the proceedings, and conduct his defense.

Appellant failed to prove by a preponderance of the evidence that the trial court abused its discretion in accepting his guilty plea.

The attorney who ably represented defendant on this appeal did not represent him in the proceedings in the trial court.

The trial court is affirmed.

Affirmed.

All Justices concur except RAWLINGS, J., who takes no part.