# IN THE COURT OF APPEALS OF IOWA

No. 18-0039
Filed November 21, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ELISA MARIE WALKER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris, Judge.

        Eliza Walker appeals after pleading guilty to one count of second-degree theft and one count of identity theft. **AFFIRMED.**

        R. Ben Stone of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann LLP, Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

        Heard by Danilson, C.J., and Potterfield and Doyle, JJ.

**DOYLE, Judge.**

Eliza Walker appeals after pleading guilty to one count of second-degree theft and one count of identity theft. She contends her counsel was ineffective in allowing her to plead guilty when questions existed concerning her competency.

**I. Background Facts and Proceedings.**

Walker was arrested on July 31, 2017, in connection with the charges that gave rise to this appeal. On August 10, 2017, the State charged her with one count of second-degree theft (obtain property of another by deception), and one count of identity theft over $1000 and under $10,000. While in jail awaiting trial, Walker sent the court numerous ex parte communications in which she asked for the court's assistance. Walker referred to her mental health in almost every correspondence, at various times stating she was "mentally ill" or "very sick mentally." She also referred to her "medical problems," "mental health problem," a "serious mental impairment," and a "mental disorder," in addition to claiming that her "brain is very bad," she had "brain problems," her "health is fallen apart," and that she has "great health needs." She complained that she was not being treated in jail "for brain, chest, back, blood clots," and that she was "really sick mentally brain and blood clots. Medical can't help me." She said she was "very sick and Medical can't help me, I'm a brain Pt and very sick." She said she was "feeling like I'm gon[n]a die with these people," and that she needed emergency medical attention. The court entered orders noting it had received the ex parte communications and also ordered the clerk of court to provide Walker's counsel with copies of the correspondence.

At the initial hearing, the district court approved Walker's application for court-appointed counsel. The court first appointed the public defender's office to represent Walker before appointing Dan O'Brien on August 4. O'Brien filed a motion to withdraw as Walker's counsel on November 12, stating there had been "an irreparable breakdown in attorney client communications" and a conflict of interest. The court appointed Jared Knapp, who represented Walker in other pending criminal matters, to represent Walker on the theft charges.

On December 6, 2017, a guilty plea hearing was held. It does not appear that the hearing was reported. The court's order states, "At the time set for hearing, [Walker] was unable to render a valid plea to the Court. The matter is returned to the trial docket."

On December 8, an unscheduled plea hearing was held before a different judge. During the plea colloquy, the court engaged Walker and her counsel in a lengthy discussion about her mental health, beginning by inquiring about her medication:

> THE COURT: Are you currently on any medication?
> THE DEFENDANT: A lot.
> THE COURT: What medication are you on?
> THE DEFENDANT: I don't even know the name of all of them they give me over there. And I—they're wrong, but they have me take them.
> THE COURT: Okay.
> THE DEFENDANT: A lot.
> THE COURT: What are you taking medication for?
> THE DEFENDANT: Because of my brain, for my back, and for my depression. These things that's on here (indicating)—let me see. Where'd they go to? (Peruses document.)
> Anxiety, depression, and mood instability. And I have something else. There's some—couple of other things. Oh, schizophrenia disorder and bipolar.
> THE COURT: Are—all the medications you're taking, are they prescribed by a doctor?

THE DEFENDANT: Yes, from over at the jail.

THE COURT: And are you taking them the way the doctor prescribed them?

THE DEFENDANT: Yeah.

THE COURT: Have you taken the medicine that you were supposed to take for today?

THE DEFENDANT: Yeah.

THE COURT: Is there anything about any of that medication that makes it difficult for you to understand what's happening?

THE DEFENDANT: No.

THE COURT: Mr. Knapp, in your conversations with Ms. Walker and the fact that she's on medication, do you have any concerns with her ability to understand what's happening here today?

MR. KNAPP [defense counsel]: In all my interactions with her I believe she understands the nature of the proceedings, I mean, and understands what's happening. That's my understand—I mean, that's my impression, Your Honor. I mean, I'm not a psychiatrist or psychologist. But I don't have reason to think she doesn't understand the nature of the proceedings.

THE COURT: And is there anything in particular about today that makes you think she doesn't know what's going on? Is today any different than any other day?

MR. KNAPP: Well—okay. Well, she seemed to think someone was in the room that is not here, so I—I saw that. But beyond that, everything else has been the same.

THE COURT: Today, you mean?

MR. KNAPP: Yes.

THE DEFENDANT: It happens all the time in my room.

MR. KNAPP: Okay. It may be a symptom of one of her conditions, Your Honor.

THE COURT: Should we perhaps put this off until Monday? I'm here on Monday as well.

MR. KNAPP: Well—

THE DEFENDANT: We—no. I don't think so because I mentally cannot take that jail anymore. I can't.

THE COURT: Mr. Knapp?

MR. KNAPP: Well, Your Honor, I mean, it seemed unusual that she said that. But she seems, you know, to be able to understand things otherwise. I mean, I—in talking with her today, I've spoken to her twice already, once at the jail and once here, and I explained the plea offer.

And she said she understood it and understands the nature of the offense and everything else. So to me, you know, I think she understands the process and what she's doing. And she does want to plead guilty, Your Honor.

THE COURT: Ms. O'Donnell, anything for the record?

MS. O'DONNELL [prosecutor]: No, Your Honor. Obviously the State is concerned about the validity of the plea if Ms. Walker is saying that she is seeing people in the courtroom who are not here.

THE COURT: And obviously that's the State's concern—or the Court's concern as well.

THE DEFENDANT: But it's just my husband, and he's just always there. Ever since he got killed, he's always been there with me.

THE COURT: Mr. Knapp, we're going to go off the record. I'm going to ask that you go over to the conference room and see if you can flush out what may or may not be happening, and we might postpone the plea.

No written order was entered.

Another unscheduled plea hearing was held six days later on December 14 before a third judge. The discussion concerning Walker's mental health at the hearing was much shorter than it had been one week prior:

THE COURT: Okay. Are you presently under the care of a doctor or a physician?

THE DEFENDANT: Yes.

THE COURT: Is that for anything that would affect your ability to understand what you're doing here today?

THE DEFENDANT: No.

THE COURT: Are you clear why you're here and what you're doing?

THE DEFENDANT: Yes.

THE COURT: Are you under the influence of any medicine, alcohol, or drugs at this time?

THE DEFENDANT: No.

The court then informed Walker of the rights she was waiving by pleading guilty, the minimum and maximum sentences for the offenses, and the elements of each offense. Defense counsel indicated Walker wanted to proceed with an *Alford* plea.[1] Defense counsel agreed when the court asked, "[B]ased upon your review

---

[1] An *Alford* plea is a variation of a guilty plea; the defendant does not admit to the commission of the criminal act but acknowledges the prosecution has enough evidence to win a conviction from a judge or jury, and the defendant consents to the imposition of a sentence. See *North Carolina v. Alford*, 400 U.S. 25, 32-38 (1970).

of the evidence do you believe that if the witnesses testified as shown in the minutes, if they testified like that, there is a reasonable likelihood that your client could be convicted of both of these offenses." He also agreed the plea agreement was in Walker's best interests and that the court could rely upon the minutes, complaint, and affidavit to form a factual basis. The following exchange occurred:

> THE COURT: Do you think it is in your best interest to take advantage of that plea agreement and have everything run concurrently?
>
> THE DEFENDANT: Yeah. I'm confused on the plea agreement but—
>
> THE COURT: Okay. What are you confused about, ma'am? Why don't you talk to your attorney and maybe he can explain it to you.
>
> (An off-the-record discussion was held.)
>
> THE DEFENDANT: Okay.
>
> THE COURT: Did you get that explained to you, ma'am?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: Okay. Are you clear, and now do you think it is in your best interests to take advantage of this plea agreement and have these new charges all run concurrently?
>
> THE DEFENDANT: Yeah, I do. But I haven't been in trouble for 8 years and with my parole officer, never missed an appointment. Nothing. No—one dirty UA over the years.
>
> THE COURT: Now, ma'am, let me stop you. If you don't want to take this plea agreement, we don't have to do it. What—We can set this back on. If you want to take advantage of the plea agreement, . . . I'll follow that, and I'll do what you've agreed to do. Is that what you want to do?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: Okay. So I will be bound by the plea agreement but—and you're satisfied that that's in your best interests?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Keeping that in mind, . . . Miss Walker, what is your plea to—by way of an *Alford* plea to the theft in the second degree charge; guilty or not guilty?
>
> THE DEFENDANT: What is my—
>
> THE COURT: Yeah. By way of an *Alford* plea?
>
> THE DEFENDANT: Oh, *Alford* plea. I was thinking that it was a third degree offense, that they will put them all in.
>
> THE COURT: Well, ma'am, it is coming in as a second degree, and so . . . is your plea by way of an *Alford* plea to count I guilty or not guilty?

THE DEFENDANT: Guilty.
THE COURT: Okay. And to count II, the identity theft, by way of an *Alford* plea, is your plea guilty or not guilty?
THE DEFENDANT: Guilty.
THE COURT: Any reason I should not accept the defendant's pleas, state?
MS. O'DONNELL: No, Your Honor.
THE COURT: Mr. Knapp?
MR. KNAPP: No, Your Honor.

The court accepted Walker's pleas, finding that she understood the rights she was waiving and that her plea was voluntarily entered with an understanding of the consequences. The court then asked Walker if she wanted to proceed to sentencing, to which she replied: "Yes. I've been over at the jail for 150-some odd days, and that is ridiculous to be sitting over there that long. . . . And I have lots of medical needs and stuff. I want to get this over with so I can go to Mitchellville and get some medical care." Walker again stated her desire to leave jail when the court asked if she wanted to make a statement of mitigation, answering, "No. Just hurry up and get me out of over there." The court then found Walker guilty of both charges and sentenced her according to the plea agreement. Addressing Walker, the court said, "You agree that it is in your best interests. We'll get you on the road, and I'll get this order done today so the next bus out of here you can jump on it." Walker responded, "Please."

The court entered judgment and sentence the same day as the plea hearing. On January 3, 2018, Walker filed a motion asking the court to reconsider its sentence in light of "her health problems," asking the court to impose a suspended sentence or set the matter for a hearing. The court denied the motion the following day, and Walker appealed.

**II. Error Preservation.**

Entry of a guilty plea waives all defenses and objections that are not intrinsic to the plea. *See State v. Carroll*, 767 N.W.2d 638, 641 (Iowa 2009). A challenge to a defendant's competency to enter a guilty plea is a challenge to the adequacy of the guilty plea proceeding in that the defendant's competency affects the knowing, voluntary, and intelligent nature of the guilty plea. *See State v. Lucas*, 323 N.W.2d 228, 231 (Iowa 1982) (stating a defendant's claim that a competency hearing was required "goes to the very heart of the court's determination that the plea was entered voluntarily, intelligently, and understandably"). Ordinarily, a defendant must file a motion in arrest of judgment before challenging the adequacy of a guilty plea proceeding on appeal. *See* Iowa R. Crim. P. 2.24(3)(a). However, a defendant's failure to file a motion in arrest of judgment does not bar a challenge to the adequacy of the plea proceeding if the failure is a result of ineffective assistance of counsel. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006).

Because Walker asserts that her trial counsel was ineffective in failing to file a motion in arrest of judgment challenging the adequacy of the plea proceedings, we may consider her claim on direct appeal.

**III. Scope and Standard of Review.**

We review an ineffective-assistance claim de novo. *See id.* In order to establish a claim of ineffective assistance of counsel, a defendant must show (1) trial counsel failed to perform an essential duty and (2) that failure resulted in prejudice. *See id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). Counsel breaches an essential duty by failing to file a motion in arrest of judgment when a defendant's plea was not knowing and voluntary. *See id.* at 134. Prejudice

is established if the record shows a reasonable probability that the defendant would not have entered a plea and would have insisted on going to trial if counsel had not breached that duty. *See id.* at 138 (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "Failure to demonstrate either element is fatal to a claim of ineffective assistance." *State v. Polly*, 657 N.W.2d 462, 465 (Iowa 2003).

**IV. Discussion.**

Iowa Code section 812.3(1) (2017) provides:

> If at any stage of a criminal proceeding the defendant or the defendant's attorney, upon application to the court, alleges specific facts showing that the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense, the court shall suspend further proceedings and determine if probable cause exists to sustain the allegations. The applicant has the burden of establishing probable cause. The court may on its own motion schedule a hearing to determine probable cause if the defendant or defendant's attorney has failed or refused to make an application under this section and the court finds that there are specific facts showing that a hearing should be held on that question.

Iowa Code § 812.3(1). Because section 812.3 applies to plea proceedings, *see State v. Kempf*, 282 N.W.2d 704, 707 (Iowa 1979), the trial court must resolve any questions concerning a defendant's mental competence before accepting a guilty plea, *see State v. Boge*, 252 N.W.2d 411, 414 (Iowa 1977). However, an inquiry into the defendant's mental health is not required during the plea proceeding unless the question of the defendant's competency is apparent from the record or the defendant has directly raised it. *See id.* ("We decline to accept petitioner's suggestion that a mental competency inquiry be added to the plea hearing procedure where no question of competency is apparent, or the question of competency is not directly raised."). Here, Walker's complaint is that her attorney

failed to request a Chapter 812 competency hearing and allowed her to proceed with her plea and sentencing.[2] The question is whether "the record contains information from which a reasonable person would believe a substantial question of the defendant's competency exists." *Kempf*, 282 N.W.2d at 706. When a question concerning the defendant's competency at the time of the plea hearing arises on appeal, we examine the information before the court at the plea hearing to determine if an unresolved question of the defendant's competency reasonably appeared. *See id.* at 707.

There is a presumption that the defendant is competent, and the defendant bears the burden of establishing incompetence. *See State v. Pedersen*, 309 N.W.2d 490, 496 (Iowa 1981). A history of mental illness, standing alone, is insufficient to establish incompetence. *See State v. Edwards*, 507 N.W.2d 393, 395 (Iowa 1993). Rather, we consider several factors in making this determination, including "(1) the defendant's irrational behavior, (2) any demeanor at the trial that suggests a competency problem, and (3) any prior medical opinion on the defendant's competency to stand trial." *Id.* We consider the cumulative effect of the factors to determine whether a question of competency reasonably appears. *See Kempf*, 282 N.W.2d at 709. "[T]he critical question . . . is whether the defendant has a present ability to (1) appreciate the charge, (2) understand the proceedings, and (3) assist effectively in the defense." *Edwards*, 507 N.W.2d at 395.

---

[2] This appeal is distinguishable from *State v. Einfeldt*, 914 N.W.2d 773 (Iowa 2018). There, defense counsel's request for a Chapter 812 competency hearing was denied by the district court. *Id.* at 775. The case primarily deals with a district judge's duty when facing a Chapter 812 motion. *Id.* at 779-783. That is not an issue here.

The record at the time of the plea hearing raises a question as to Walker's competence. Only eight days earlier, the district court rejected Walker's guilty plea because it found she was "unable" to render a valid plea. Two days later, another hearing was held and the guilty plea was postponed because of concerns about the validity of the plea. There is no indication that anything had changed by the third plea hearing. However, the record is insufficient to allow us to determine whether counsel was ineffective. *Lucas*, 323 N.W.2d at 232 ("Normally, however, the record on appeal is insufficient to allow us to consider a claim of ineffective assistance of counsel, and we often reserve the claim for a post-conviction proceeding so that the facts, including an explanation of counsel's actions or omissions, may be fully developed."). The record is devoid of any information concerning what, if any, investigation counsel made as to Walker's competency. *See id.* There is no medical evidence concerning Walker's ability to appreciate the charges she was facing, understand the proceedings, or assist effectively in her defense. There is no medical evidence concerning the effects of the medication Walker was taking. In order to determine the validity of Walker's claim of ineffectiveness of counsel, an evidentiary hearing is necessary. Because a postconviction-relief proceeding is the appropriate forum in which to conduct such a hearing, *see id.*, we preserve Walker's ineffective-assistance claim. *See State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010) (If the appellate court determines the claim cannot be addressed on appeal, the court must preserve it for a postconviciton-relief proceeding.).

**AFFIRMED.**